Chris GEANEAS, etc., et al., Plaintiffs,

v.

Charles W. WILLETS, et al.,
Defendants.

No. 83–344–CIV–ORL–19.

United States District Court,
M.D. Florida,
Orlando Division.

March 15, 1989.

Eric A. Latinsky, Daytona Beach, Fla., for plaintiffs.

Frank B. Gummey, III, and Reginald E. Moore, Daytona Beach, Fla., for defendants.

## ORDER

FAWSETT, District Judge.

This case was presented to the Court sitting as jury for trial on February 22, 23 and 28, 1989.[1]  In its previous Order dated January 12, 1988, this Court determined that Daytona Beach Ordinance 81–334, codified as City of Daytona Beach Code Section 5–25, is not unconstitutional on its face.  As to the contention of vagueness, however, the Court at that time focused primarily on the provisions of the Ordinance dealing with exposure of the female breast, as the parties had stated that they were not then in contention concerning the provision of the Ordinance prohibiting exposure of buttocks.  However, the Plaintiffs now claim that the City has revived its enforcement of the buttocks portion of the Ordinance, and therefore this additional issue has been presented to this Court.

This Order is limited to determination of two issues: (1) whether the portion of the Ordinance prohibiting exposure of buttocks is unconstitutionally vague; and (2) whether the Ordinance has been selectively enforced against the Plaintiffs.

## STATEMENT OF THE FACTS

Effective October 21, 1981, the City of Daytona Beach enacted City Code Section 5–25 (Daytona Beach Ordinance No. 81–334), which provides in pertinent part:

"(a) No person shall expose to public view his or her genitals, pubic area, vulva, anus, anal cleft or cleavage or buttocks or any simulation thereof in an establishment dealing in alcoholic beverages.

(b) No female person shall expose to public view any portion of her breasts below the top of the areola or any simulation thereof in an establishment dealing in alcoholic beverages."

The Ordinance also prohibits persons maintaining, owning, or operating an establishment dealing in alcoholic beverages from suffering or permitting such conduct.  The practical result of this enactment was to create a clash between those responsible for enforcing the laws of the City and the owners and employees of the then "topless go go" establishments located within the city.

Partly because of the social context in which this Ordinance was enacted, there was a period of uncertainty as to the meaning of the prohibitions contained in the enactment.  On May 22, 1982 Leslie Grier, now Hamlin, was arrested for performing an exotic dance during which a portion of her buttocks was exposed.  The charges were dismissed pursuant to an order of the state County Court Judge Josephson dated April 23, 1982 in which it was determined that the entire buttocks must be exposed before a violation of the Ordinance occurred.  On October 2, 1982 Ms. Grier–Hamlin was again arrested for exposure of a portion of her breast below the areola and for exposure of her buttocks during a performance in one of the Plaintiffs' establishments.  On April 21, 1983 state County Court Judge McDermott dismissed the charges, ruling that the prohibition against exposure of the female breast in the Ordi-

---

1. At trial Plaintiffs' oral motion to voluntarily dismiss their claims against John M. Power was granted.

nance was overly broad and the prohibition against exposure of buttocks required the entire buttocks to be exposed to constitute a violation.

On October 8, 1982 Denise Carol Del Pinto, now Ferraro, was arrested and charged with violating this Ordinance, and on August 14, 1982 Donna Michelle Boido, now Heiser, a bartender, was arrested as a person in charge of one of the Plaintiff establishments when a violation of the Ordinance occurred. Further, in November of 1982, Mr. Leonard Paul Del Percio, principal shareholder and owner of the Shingle Shack and the Function Junction, removed photographs from the walls of his establishments and ceased a sale of calendars featuring pictures of his exotic dancers pursuant to direction of officers of the City of Daytona Beach Police Department under authority of the Ordinance.

Other arrests followed and led to contradictory orders of the state courts as to the meaning of the Ordinance and the conduct which was prohibited.[2] On March 29, 1984 the Florida Fifth District Court of Appeal determined that the Ordinance was "vague, overbroad, not fairly enforceable, and thus unconstitutional." *Del Percio v. City of Daytona Beach*, 449 So.2d 323 (Fla. 5th DCA 1984). Thereafter, the Supreme Court of Florida issued its opinion on August 30, 1985 upholding the constitutionality of the Ordinance and determining that exposure of the female breast below a line drawn across the top of the areolas was prohibited conduct. *City of Daytona Beach v. Del Percio*, 476 So.2d 197 (Fla. 1985).

More recently, exotic dancers in the Plaintiffs' establishments have been arrested for exposure of their buttocks while wearing t-straps, making the provision of the Ordinance prohibiting exposure of buttocks in establishments dealing in alcoholic beverages an issue properly presented for determination by this Court.

With one exception, the evidence reflects that the City of Daytona Beach police enforce the Ordinance only against employees of establishments dealing in alcoholic beverages which also feature exotic dancing as entertainment for their patrons, although the officers acknowledged that the Ordinance could be enforced in other areas of the City.[3] Both former Police Chief Willits and present Police Chief Crow testified that there was no policy precluding enforcement of the Ordinance in pool bars and other establishments dealing in alcoholic beverages in addition to its enforcement in the establishments affording exotic dance as entertainment. The officers also testified that Ordinance 29–5, prohibiting exposure of the areola of the female breast, was the ordinance of choice enforced in other commercial establishments dealing in alcoholic beverages, excluding the exotic dance bars.

The evidence was undisputed that in commercial establishments dealing in alcohol, excluding such establishments which provided exotic dance as entertainment, portions of the female breast below the areola and portions of the buttocks were exposed without arrests being made, even though the violations were known to Daytona Beach police officers who were present at the time. These violations of the Ordinance were more prevalent during "bike week" and "spring break", when wet t-shirt contests and bikini contests at the pool-side bars along the city's famous beach resulted in numerous technical viola-

---

**2.** The employees of the commercial establishments dealing in alcoholic beverages which also afforded exotic dance as entertainment changed the types of costumes being worn in response to court orders, utilizing, *inter alia,* flesh colored surgical tape to cover the breasts and t-straps to cover the dancers' posteriors.

**3.** Other than a recent arrest at an establishment known as Razzles, there is no evidence that Section 5–25 has been enforced in any establishments other than those featuring exotic dancers. Although Captain Barry Neal of the Daytona Beach Police Department, who was not an arresting officer, testified that he thought Ordinance 5–25 was enforced in establishments dealing in alcoholic beverages other than those featuring exotic dancing, especially during bike week and spring break, the remaining officers who testified on the subject stated that while the Ordinance could be enforced in other establishments dealing in alcoholic beverages, it was actually enforced only in those establishments which also featured exotic dancing.

tions of the Ordinance, with an estimated fifty percent or more of the females present at these events wearing bathing suits exposing a portion of the buttocks.

No malice, bad faith, or racial or religious discrimination attributable to Defendants was shown by the evidence. Defendants explain their enforcement of the Ordinance only in the nonresidential establishments dealing in alcoholic beverages which also afford exotic dancing as entertainment on the grounds, *inter alia,* (1) that such establishments and their employees have knowledge of the Ordinance whereas tourists and other persons present at other commercial establishments dealing in alcoholic beverages do not; (2) that the police department is aware of a history of flagrant and consistent violations of the Ordinance occurring in commercial establishments dealing in alcoholic beverages which also offer exotic dancing as entertainment; (3) that the manpower constraints of a police force numbering two hundred and ten officers for a city of sixty-two thousand regular inhabitants, which number swells to between three and seven hundred thousand during spring break, bike week and other special events, make it impossible to cause an arrest for every violation of the Ordinance; and (4) that the police officers, exercising their discretion, choose not to enforce the Ordinance at certain crowded and raucous events where there is, in their view, a significant risk that such enforcement would cause danger to the safety of the officers and/or the public.

The police officers who were questioned on the subject testified that if any part of the buttocks were exposed in a nonresidential establishment dealing in alcoholic beverages, an arrest could be made for a technical violation of the Ordinance, and that it was left to each officer's discretion as to how much of the buttocks must be exposed before an arrest under the Ordinance would be made. While all agreed that the arrests actually made under the Ordinance

were only for "flagrant" or "obvious" violations, the officers differed in their opinions as to what constituted a "flagrant" or "obvious" violation.

At the conclusion of the trial the Court questioned the parties, indicated the Court's preliminary and tentative views, allowed the parties to present further argument to rebut or strengthen the Court's initial analysis, and requested that the parties submit to the Court any additional law supporting their respective positions. Upon further reflection and consideration of the evidence, the arguments, and the authorities presented by the parties, the Court rules as follows.

### I. Facial Constitutionality of Provision Prohibiting Exposure of Buttocks

The Court agrees with Plaintiffs that the portion of this Ordinance prohibiting exposure of buttocks is somewhat vague. First, the Ordinance does not specify whether the entire buttocks, or what portion thereof, must be covered. Secondly, the Ordinance does not define the word "buttocks," and this term is not easily reduced to precise definition. The Court finds that the buttocks provision is not *unconstitutionally* vague, however.

The Ordinance is not "impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).[4] There is no question that the Daytona Beach Ordinance would prohibit complete exposure of the entire buttocks, and there could be no claim of vagueness or ambiguity as to such application of the Ordinance. Since the Ordinance is capable of at least this one valid application, it could not be held unconstitutionally vague on its face under the test in *Hoffman Estates.*

It is true that enactments which interfere with constitutionally protected

---

**4.** At least where an enactment "implicates no constitutionally protected conduct," it should not be held facially unconstitutional if it is capable of *any* valid application. *See Hoffman Estates, supra,* 455 U.S. at 494 n. 5, 102 S.Ct. at

1191 n. 5, citing *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974). *See also High Ol' Times, Inc. v. Busbee,* 673 F.2d 1225, 1228 (11th Cir.1982).

conduct should be held to a more stringent test for vagueness than other enactments. *Hoffman Estates, supra,* at 499, 102 S.Ct. at 1193. While the Twenty-first Amendment augments the City's power to restrict the Plaintiffs' exercise of their First Amendment rights in connection with the sale of liquor,[5] it does not obliterate those rights entirely, nor does it affect the Plaintiffs' due process right to fair notice of what is prohibited. *Cf. Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (holding that the Twenty-first Amendment does not alter the application of equal protection standards). The Court finds, however, that Section 5–25 withstands even a stringent test for vagueness.

■ The rationale behind the "void for vagueness" doctrine was discussed by the Supreme Court in *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* Third, vague laws may tend to chill the exercise of constitutionally protected conduct. *Id.* With these underlying concerns in mind, the Court finds that the language of the Ordinance is not impermissibly vague.

Webster's New International Dictionary (2nd Edition, unabridged, 1942) defines "buttock" as: "1. The part at the back of the hip, which in man forms one of the protuberances on which he sits; in *pl.,* the rump." In Stedman's Medical Dictionary (Fifth Unabridged Lawyers' Edition, 1982), "buttocks" is defined as "nates," and "nate" is defined as "... the prominence formed by the gluteal muscles on either side." The gluteal muscles, in turn, consist of the gluteus medius and the gluteus maximus, and run from the back of the hip to the back of the leg. Admittedly, it is not easy to pinpoint for all persons the exact place on the body where the "prominence formed by the gluteal muscles" begins and where it ends, given the interwoven nature of the human musculature and the variation in the contours of human flesh.

The fact that the word "buttocks" may be difficult to define in words does not mean that it is impermissibly vague, however. While it is cumbersome to articulate a precise definition which conforms to the common understanding of the word "buttocks," the task is not impossible. Since the term "buttocks" as commonly understood can be defined, the term is not so vague as to make compliance with the Ordinance unduly difficult or enforcement unduly arbitrary, nor is it so vague as to chill the Plaintiffs' conduct.[6]

While the City of Daytona Beach could perhaps have drafted a more precise statute, the "prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke,* 423 U.S. 48, 49, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). *See also United States v. Powell,* 423 U.S. 87, 94, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975); *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947). Indeed, "few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor*

---

5. *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981).

6. There has been no testimony suggesting that the dancers cover more than the buttocks in order to be sure they are in compliance, nor that exotic dancing has been chilled.

*Lines v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952).

"In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proferred." *Hoffman Estates, supra,* 455 U.S. at 494 n. 5, 102 S.Ct. at 1191 n. 5, citing *Grayned v. City of Rockford, supra,* 408 U.S. at 110, 92 S.Ct. at 2300, 33 L.Ed.2d 222 (1972). The Florida Supreme Court in *City of Daytona Beach v. Del Percio,* 476 So.2d 197 (Fla.1985) gave its interpretation of the breast portion of the Ordinance, but did not interpret the buttocks portion. Since this Court is unable to certify the question, it must attempt to extrapolate the meaning the state's highest court would most likely give to the buttocks provisions. *See Grayned, supra,* 408 U.S. at 110, 92 S.Ct. at 2300.

■■■ After consideration of the wording of the Ordinance itself, the various interpretations of the Ordinance by the state trial courts, and the Florida Supreme Court's ruling on the breast portion of the Ordinance, this Court is of the opinion that the Florida Supreme Court would interpret the buttocks portion of the ordinance to prohibit exposure of *any portion* of the buttocks. Further, the state's highest court would probably define the word "buttocks" to include the area at the rear of the body which lies between two imaginary lines running parallel to the ground when a person is standing, the first or top such line drawn at the top of the cleavage of the nates and the second or bottom line drawn at the lowest visible point of this cleavage or the lowest point of the curvature of the fleshy protuberance, whichever is lower, and between two imaginary lines on each side of the body, which lines are perpendicular to the ground and to the horizontal lines described above, and which perpendicular lines are drawn through the point at which each nate meets the outer side of each leg. The Ordinance would be violated, therefore, if any portion of this area is visible from any vantage point. Since this is the "core meaning" which "persons of ordinary intelligence" would draw from the language of the Ordinance as it is written, the Ordinance is not impermissibly vague. *See High Ol' Times v. Busbee,* 673 F.2d 1225 (11th Cir.1982).

As to the question whether the Ordinance prohibits partial or only total exposure of the buttocks, since it would be unreasonable to imagine that the City Council intended to permit partial exposure of the genitals, pubic area, vulva, anus, or anal cleft or cleavage, in light of the stated legislative purpose to prohibit "nudity and sexual conduct and depiction thereof coupled with alcohol in public places," and since the words "or buttocks" appear as words in a series within the same clause as "genitals, pubic area, vulva, anus, or anal cleft or cleavage," a person of ordinary intelligence would assume that the legislature intended to prohibit exposure of any portion of the buttocks.

This construction is also consistent with the interpretation of the buttocks provision by those charged with enforcing the Ordinance. The officers who testified on the subject stated that they interpreted the Ordinance as prohibiting exposure of *any portion* of the buttocks. While the officers had difficulty giving a precise definition of the term "buttocks," and while they differed as to what would amount to a flagrant violation for which they would arrest, none of the exhibits focused attention on, and no arrests were made for, exposure of areas of the buttocks outside the lines described above.

While two state trial courts have interpreted the Ordinance to allow partial exposure of the buttocks and to prohibit only exposure of the entire buttocks,[7] the converse of this Court's ruling, these state trial courts were apparently straining to construe the statute narrowly in order to save it from unconstitutional overbreadth. Later, in *City of Daytona Beach v. Del Percio, supra,* the Florida Supreme Court indicated that such narrow constructions were unnecessary in light of the Twenty-

---

7. *See* Order of County Judge Josephson dated September 23, 1982, Plaintiffs' Exhibit 5–C; and Order of County Judge McDermott dated April 21, 1983, Plaintiffs' Exhibit 5–K and L.

first Amendment cases. The state Supreme Court in that case was willing to draw an imaginary line across the top of the areolas, and it seems probable that it would draw the lines described here as to the buttocks portion of the Ordinance.

## II. Selective Enforcement of the Ordinance

■ Plaintiffs have also argued that the Ordinance has been selectively enforced against them. To establish their claim of selective enforcement, the Plaintiffs would have to show (1) that they have been singled out for prosecution while others who are similarly situated have not been prosecuted, and (2) that the selection of Plaintiffs for prosecution was invidious or in bad faith. *Fillingim v. Boone*, 835 F.2d 1389, 1399 (11th Cir.1988); *Lanier v. City of Newton*, 842 F.2d 253, 256 (11th Cir.1988).

■ The Court finds that Plaintiffs have set forth evidence sufficient to meet the first prong of the selective enforcement test. Section 5–25 has been enforced almost exclusively against those presenting partially nude, non-obscene dance as entertainment, even though by its terms the Ordinance is applicable to all non-residential establishments dealing in alcoholic beverages and even though violations of the Ordinance do occur in other such establishments.

Plaintiffs have not shown, however, that the City's prosecution of Plaintiffs was invidious or in bad faith. The United States Supreme Court has made clear that "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *see also Owen v. Wainright*, 806 F.2d 1519 (11th Cir.1986), *cert. denied sub nom., Owen v. Dugger*, 481 U.S. 1071, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987). As stated by the Eleventh Circuit, "[t]he invidiousness requirement is satisfied only if it can be established that the government's selective prosecution is motivated by constitutionally impermissible motives such as

racial or religious discrimination or interference with the legitimate exercise of constitutional rights." *Fillingim, supra* 835 F.2d at 1399, citing *United States v. Lichtenstein*, 610 F.2d 1272, 1281 (5th Cir. 1980), *cert. denied sub nom, Bella v. United States*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). While the Ordinance here *affects* the exercise of constitutional rights, the selectivity evidenced by the City in enforcing this Ordinance was not shown to have been *motivated* by an intent to interfere with such rights. Nor have Plaintiffs suggested any other impermissible motive on the part of Defendants.

Plaintiffs have presented no evidence that Defendants attempted to do anything other than effectuate the intent of the Ordinance. While the Plaintiffs have offered no evidence of an invidious motive, the City has indicated that it chose to enforce the Ordinance against these particular Plaintiffs because the violations of the Ordinance by these Plaintiffs have been longstanding and flagrant and because these Plaintiffs have had knowledge and fair warning of the Ordinance's provisions.[8] Defendants have also convincingly demonstrated that enforcement of the Ordinance in other establishments dealing in alcoholic beverages would involve persons unaware of the Ordinance and, during events such as bike week and spring break, would often be impractical, in some circumstances endangering the safety of the officers and/or the public. The burden of proof in establishing a claim of selective prosecution is a heavy one. *Fillingim, supra* 835 F.2d at 1398, citing *United States v. Johnson*, 577 F.2d 1304, 1308 (5th Cir.1978). Plaintiffs have not met it here.

## III. Conclusion

In summary, the Court now concludes that the provisions of Daytona Beach City Code Section 5–25 prohibiting buttocks exposure, as well as the provisions prohibiting breast exposure, are not unconstitutional facially or as applied, and that the Ordinance has not been selectively enforced in a

---

8. These warnings include, but are not limited to, letters sent by police officers to the Plaintiffs' establishments prior to initiating enforcement of the Ordinance. *See* Defendants' Exhibit 3.

manner violative of Plaintiffs' constitutional rights. The issue of damages, therefore, is moot, and the case is DISMISSED.

DONE AND ORDERED.