DODGER'S BAR & GRILL, INC., a corporation, dba Bonita Flats Saloon, Plaintiff–Appellant,

and

Rhondi Davis, Sheila King, Elizabeth Lucas, Rhonda Wheeler, Serena Parker, Melissa Jones, Cheri Davidson, Tammy Scheumeister, Anita Bower, Marley Weston, Suzy Kelly, Rachal Workman, Brooke Utz, Debra Maness, Laurie Boyer, Shelley Stewart, Vicki Smith, Jessica Allen, Deanna Hurst, Brenda Shook, Cyndi Schmidt, Susan Prince, Angela Thomas, Desiree Edwards, Orissa Hanson, Jackie Arnett, Robin Packard, Nicole Hestand, Jana Sullins, Nancy Sesler, Lewana Duncan, Sandy Watson, Chrissie Malloy, Tina L. Smith, Plaintiffs,

v.

JOHNSON COUNTY BOARD OF COUNTY COMMISSIONERS; Johnna (NMI) Lingle, Chair, Johnson County Commissioner; Sue E. Weltner, Johnson County Commissioner; Bruce R. Craig, Johnson County Commissioner; Murray L. Nolte,

Johnson County Commissioner; Dan (NMI) Hosfield, Johnson County Commissioner; Fred Allenbrand, Johnson County Sheriff; Paul (NMI) Morrison, Johnson County District Attorney, Defendants–Appellees,

Platinum of Kansas, Inc., Amicus Curiae.

No. 93–3097.

United States Court of Appeals, Tenth Circuit.

Aug. 8, 1994.

Brock R. Snyder, Topeka, KS, (John B. Williams, Kansas City, MO, with him on the brief), for plaintiffs-appellants.

LeeAnne Hays Gillaspie, Chief Deputy County Counselor, Johnson County Legal Dept., Olathe, KS, for defendants-appellees Bd. of County Com'rs and Paul Morrison, Johnson County Dist. Atty., (Lawrence L. Ferree, III, and Ronald C. Rundberg, of Ferree, Bunn & Byrum, Overland Park, KS, with her on the briefs for defendant-appellee Fred Allenbrand, Johnson County Sheriff).

Clyde F. DeWitt and Gregory A. Piccionelli of Weston, Sarno, Garrou & DeWitt, Beverly Hills, CA, and Richard T. Bryant of Copilevitz, Bryant, Gray & Jennings, Kansas City, MO, filed an amicus curiae brief on behalf of Platinum of Kansas, Inc.

Before LOGAN and McKAY, Circuit Judges, and SAM, District Judge.*

LOGAN, Circuit Judge.

Plaintiffs Dodger's Bar & Grill, Inc. and more than thirty dancers who are or were employed by Dodger's, appeal from the district court's judgment for defendants, John-

* The Honorable David Sam, United States District Judge, United States District Court for the District of Utah, sitting by designation.

son County Board of County Commissioners (Board), Sheriff Fred Allenbrand, and District Attorney Paul Morrison, on plaintiffs' claims for injunctive relief and declaratory judgment. 815 F.Supp. 399. Plaintiffs argue that particular sections of the Adult Entertainment Code, drafted and promulgated by defendants to regulate nude dancing in businesses serving liquor in unincorporated areas of Johnson County, Kansas, are facially unconstitutional, overbroad and vague. We affirm the district court's judgment in part and remand for consideration and ruling on one issue.

## I

In 1992, several of the defendants began receiving complaints about activities in and around the Platinum Club and the Bonita Flats Saloon, a "nude bar" operating in unincorporated Johnson County, Kansas. During that same time period, nude bars in neighboring Wyandotte and Jackson counties were receiving considerable negative publicity about their operations. One bar in Kansas City, Kansas, was bombed.

The defendant Board received a zoning application from a Wyandotte County entrepreneur and proprietor of nude clubs seeking permission to build a bar and restaurant in Johnson County. Realizing that surrounding municipalities had already begun regulating nude clubs and bars, the Board anticipated that unincorporated Johnson County could become a safe haven and magnet for all such clubs in the area if it did not act. Accordingly, the Board sought the opinion of the sheriff and district attorney on appropriate regulation.

As defendants began to gather information, they received another inquiry about establishing an "upscale" nude club in Johnson County. Defendants studied the issue of regulation for approximately six months, examining ordinances and studies from other municipalities focusing on the harmful secondary effects of nude clubs. Defendants held public Board meetings which were attended by various representatives of plaintiffs. They heard complaints from local residents, including women who had been followed to their homes by patrons exiting plaintiffs' club. There were reports of people urinating in the parking lot and roadways and theft of property from nearby residences. Some citizens expressed concern about the effect of nude clubs on property values in the area and the danger of having the patrons of such clubs driving around their neighborhoods after drinking alcohol.

The defendant district attorney with input from the Board's counsel worked to draft a code regulating nude clubs. The police department and the district attorney gathered information about plaintiffs' club and found incidents of assault, drug use, drug sales, and other illicit activities. Their investigation also revealed that there was considerable intimate physical contact between the nude or mostly nude dancers and club patrons, which could not be regulated effectively by existing statutes on prostitution or lewd and lascivious behavior. *See* Appellants' App. 103–04, Ex. 407 (documenting the practice of "lap dancing" which involves a dancer sitting on the lap of a patron while slowly gyrating her buttocks or crotch on the patron's crotch and permitting the patron to fondle her breasts and buttocks). Based on their study and investigation, the Board passed two resolutions, jointly known as the Adult Entertainment Code (AEC),[1] to regulate nude clubs

---

1. Res. 67–92, Art. II § 2 of the AEC provides as follows:

SECTION 2. *APPLICABILITY.* This Chapter shall apply from and after its effective date to all persons and all property located within the unincorporated area of Johnson County, Kansas and shall be applicable to any business establishment, whether licensed or not, now located or hereafter locating within or upon any property located in the unincorporated area of Johnson County, Kansas, which serves alcoholic beverages or cereal malt beverages for consumption on the premises, and to any operator of or entertainer for any such establishment.

Res. 67–92, Art. IV §§ 1(A.) and 2(A.) of the AEC provide as follows:

SECTION 1. Nudity and Sexual Conduct Prohibited.

A. No person shall, on licensed premises, perform acts of or acts which constitute or simulate:

(1) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law; or

serving alcohol in unincorporated Johnson County.

## II

Before oral argument of this appeal we requested the parties to file memorandum briefs addressing whether the notice of appeal filed in this case was sufficient to confer jurisdiction over all the named plaintiffs or only over Dodger's Bar and Grill. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), addresses the requirement of Fed.R.App.P. 3(c) that the notice of appeal "specify the party or parties taking the appeal" and holds it is not met by the use of "et al." to designate multiple appellants. *See Torres*, 487 U.S. at 318, 108 S.Ct. at 2409.

The notice of appeal in the instant case identifies the plaintiffs in the caption as "Dodger's Bar & Grill Inc., a corporation, d/b/a Bonita Flats Saloon, et al.," and in the body of the notice as "Dodger's Bar and Grill, Inc. and the other individually-named plaintiffs...." Under several of our decisions since *Torres*, the instant notice of appeal would seem insufficient to give us jurisdiction over any but Dodger's Bar & Grill. *See, e.g., Storage Technology Corp. v. U.S. Dist. Court for Dist. of Colo.*, 934 F.2d 244, 247–48 (10th Cir.1991) ("et al." in caption and notice that contained language "all the Defendants of record herein" did not provide clear point of reference for reviewing court to identify appellants in bankruptcy case); *Laidley v. McClain*, 914 F.2d 1386, 1389 (10th Cir.1990) ("et al." designation together with "plaintiffs hereby appeal" not sufficient to provide jurisdiction over unnamed plaintiffs under Rule 3(c) and *Torres*). Nevertheless, Fed.R.App.P. 3(c) has recently been amended to provide that "[a]n attorney representing more than one party may fulfill this requirement by describing those parties with such terms as 'all plaintiffs.'" The Advisory Note states that "the amendment allows an attorney representing more than one party the flexibility to indicate which parties are appealing without naming them individually." Fed.R.App.P. 3 advisory committee's note, 1993 Amendment. Because "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity," *Landgraf v. USI Film Products*, —— U.S. ——, ——, 114 S.Ct. 1483, 1502, 128 L.Ed.2d 229 (1994), and the United States Supreme Court order adopting the amendments effective December 1, 1993, instructs us to apply the new rules to all pending appeals "insofar as just and practicable," 61 U.S.L.W. 5365 (U.S. April 27, 1993), we conclude that Rule 3(c) as amended should be applied in this case. Defendants will suffer no prejudice or injustice by the participation of the individual plaintiffs in this appeal, and we believe the designation by the attorney who represents all of

---

(2) The touching, caressing or fondling of the breast, buttocks, anus, or genitals; or

(3) The displaying of post-pubertal human genitals, buttocks, or pubic area, or the female breast below the top of the nipple.

SECTION 2. Allowing Persons to Engage in Prohibited Acts.

A. No operator shall allow or permit to remain in or about the licensed premises any person who performs acts of or acts which constitute or simulate:

(1) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law; or

(2) The touching, caressing or fondling of the breast, buttocks, anus or genitals; or

(3) The displaying of post-pubertal human genitals, buttocks, or pubic area, or the female breast below the top of the nipple.

Res. 67–92, Art. V, § 2 of the AEC provides:

SECTION 2. *PENALTIES.* Any person or operator who violates any provision of this Chapter shall be guilty of a Class B misdemeanor, and, upon conviction shall be punishable by a fine in an amount not less than $250.00 and not to exceed $1,000.00, or imprisonment in the County jail for a period not to exceed six months or both. Appellants' App. 29, 30.

Res. 68–92, Art. III, § 5 of the AEC provides in relevant part: "[N]or shall any person allow or permit such acts prohibited by Chapter 1 [Res. 67–92] to occur in any room, building premises or place within 1,000 feet of a licensed premises or other business premises covered by this Chapter."

Res. 68–92, Art. IV, § 2 of the AEC provides:

SECTION 2. *PENALTIES.* Violation of any provision of this Chapter, and amendments thereto, shall be deemed a public offense and a Class H infraction under the County Code, and shall be punishable, upon conviction, by a fine in an amount not less than $100.00 and not to exceed $500.00 for each infraction. Appellants' App. 36, 37.

the plaintiffs that the appeal is by Dodger's "and the other individually-named plaintiffs" is sufficient to confer jurisdiction and to meet the "fair notice" requirement that *Torres* and new Rule 3(c) demand.

### III

▮▮▮ Turning to the merits, we note that although the Supreme Court has acknowledged that some forms of nude dancing may be properly characterized as "expressive conduct within the outer perimeters of the First Amendment," *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991), our analysis of plaintiffs' facial attack on the AEC's constitutionality is framed by doctrine of the Twenty–First Amendment, not the First[2]. Put simply, this is a case primarily about regulating the service of alcohol in nude bars and clubs, not about censoring artistic performance. It is a well-established constitutional principle that "the States[3], vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power," *California v. LaRue,* 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972). And the police power encompasses "the authority to provide for the public health, safety, and morals." *Barnes,* 501 U.S. at 569, 111 S.Ct. at 2462. When a regulation does not impinge upon a "fundamental right," the state need only articulate a rational basis for the exercise of police power, *see Bowers v. Hardwick,* 478 U.S. 186, 196, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986), and to date, the Supreme Court has not recognized a fundamental right to unrestrained nude dancing in all settings. Therefore, plaintiffs argue, as they must, that defendants did not provide a ra-

tional basis for the challenged AEC provisions.

▮▮▮ More than twenty years ago the Supreme Court upheld the constitutionality of a state regulation with a purpose and language virtually identical to the purpose and language of the AEC in the instant case. In *LaRue,* the Court indicated that "the broad sweep of the Twenty–First Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals," *LaRue,* 409 U.S. at 114, 93 S.Ct. at 395, and that "something more" creates an "added presumption in favor of the validity" of state regulations concerning alcohol. *Id.* at 118, 93 S.Ct. at 397; *New York State Liquor Auth. v. Bellanca,* 452 U.S. 714, 718, 101 S.Ct. 2599, 2601, 69 L.Ed.2d 357 (1981). Believing the First and Fourteenth Amendments would be undermined if the "bacchanalian revelries" circumscribed by the liquor regulation in that case were not distinguished from "a performance by a scantily clad ballet troupe in a theater," the Court held that the state's conclusion that "certain sexual performances and the dispensation of liquor by the drink" should not occur on the same premises was entirely rational. *LaRue,* 409 U.S. at 118, 93 S.Ct. at 397.

In the instant case, the district court's factual findings are supported by the record and detail, as noted above, a lengthy period of study during which defendants accumulated and reviewed a variety of information before promulgating the AEC. Evidence of assaults, batteries, drug deals, and inappropriate intimate conduct between nude dancers and patrons at the plaintiffs' club combined with the fears of Johnson County residents about their personal safety provide a rational basis to justify the challenged regulation.[4]

---

**2.** The Twenty–First Amendment provides, in pertinent part: "The transportation or importation into any state, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. 21.

The First Amendment provides, in pertinent part: "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. 1.

**3.** Kansas law provides legal authority for Kansas counties to share in the state's police power. *See* Kan.Stat.Ann. §§ 19–101, 101a–101f.

**4.** We note that the AEC does not regulate erotic nude performances in clubs that do not serve alcoholic beverages, and, significantly, it would appear that briefly-attired, though not totally nude, entertainers may still perform erotic, noncontact dances in clubs serving alcohol without transgressing the legislated guidelines.

## IV

■ Plaintiffs argue that the AEC is overbroad and void for vagueness. As this is a review of action in a declaratory judgment proceeding and plaintiffs have not been charged with any violation of the AEC, we analyze the arguments under the constitutional standards applicable to facial overbreadth and vagueness challenges. In this procedural posture, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). If the AEC does not infringe upon such protected conduct, then the overbreadth challenge will fail. *See id.* We proceed to this analysis.

### A

■ Plaintiffs argue that the AEC sweeps within its prohibitions conduct protected by the First Amendment, and thus is unconstitutionally overbroad. Fearful that protected expression will be chilled, the Supreme Court recognizes that "the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973) (citations omitted). Addressing this concern, the overbreadth doctrine constitutes one of a few limited exceptions to the basic principles "that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied to others, in other situations not before the Court," *id.* at 610, 93 S.Ct. at 2915 (citations omitted), and that "constitutional rights are personal and may not be asserted vicariously." *Id.* (citing *McGowan v. Maryland,* 366 U.S. 420, 429–30, 81 S.Ct. 1101, 1106–08, 6 L.Ed.2d 393 (1961)).

In light of the overbreadth doctrine's unique nature, however, the Supreme Court emphasizes that

> facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.

*Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917. "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.*

■ Plaintiffs essentially offer two overbreadth arguments. First, they rely on *Barnes,* 501 U.S. at 562, 111 S.Ct. at 2456, in asserting that the AEC restrictions on displaying buttocks and the female breast below the top of the nipple are greater than needed to further the defendants' interest. This argument rests in large part on their observation that the AEC prohibits some attire, such as thong bikinis, that can legally be worn in some public places.[5] Plaintiffs also claim that many bikini styles do not cover what could be considered part of the buttocks, and question whether the AEC requires that a dancer in an "adult entertainment club" wear more clothing than someone in a public swimming area.

Plaintiffs reason that if the Supreme Court held in *Barnes* that a regulation requiring dancers to wear a G-string and pasties was constitutional, then an ordinance requiring any more physical coverage must necessarily be unconstitutional and void. We do not agree. As the Court noted in *Barnes,* a requirement that dancers wear some clothing "does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic." *Barnes,*

---

**5.** Although plaintiffs characterized this as a vagueness argument in their brief, it is better characterized as an overbreadth argument.

501 U.S. at 570, 111 S.Ct. at 2463. The Court certainly did not hold that an ordinance requiring dancers to wear something more than G-strings and pasties would be unconstitutional. As we have noted, the county commission has broad power under the Twenty–First Amendment to regulate the service of alcohol, and the state's power to regulate alcohol outweighs the marginal First Amendment interest in totally nude dancing and other conduct prohibited by the AEC. *See Bellanca,* 452 U.S. at 717, 101 S.Ct. at 2601. We have no doubt that under the broad powers of the Twenty–First Amendment the county commission can require more clothing be worn by erotic dancers in an establishment serving liquor than by citizens on the street or beaches.

 Plaintiffs also claim that the AEC will unconstitutionally restrict the attire of their patrons. But we find the reasoning of the Eleventh Circuit in *Geaneas v. Willets,* 911 F.2d 579 (11th Cir.1990), *cert. denied,* 499 U.S. 955, 111 S.Ct. 1431, 113 L.Ed.2d 484 (1991), persuasive in rejecting this overbreadth argument. Plaintiffs fail to demonstrate any First Amendment interest of either dancers or bar owners in allowing their patrons to wear revealing clothing. Further, because "the chilled expression—the conduct of wearing revealing clothing—rests at a pronounced distance from the 'pure speech'" at the core of the First Amendment, plaintiffs simply do not have standing to assert any rights to wear scant attire that patrons could possibly have in this setting. *Id.* at 585–86.

Even if one can conceive of some impermissible applications of the AEC that alone is not sufficient to make a successful overbreadth challenge. *See Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). Plaintiffs have not demonstrated that the AEC is unconstitutionally overbroad—that it reaches a substantial amount of protected conduct.

**B**

 Considering the vagueness argument, in this preenforcement context we will "uphold the [plaintiffs'] challenge only if the enactment is impermissibly vague in all of its applications," *Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191. Whether a statute, regulation, or local ordinance is unconstitutionally vague is a question of law that we review de novo. *See United States v. Patzer,* 15 F.3d 934, 938 (10th Cir.1993).

 The Fourteenth Amendment Due Process Clause requires that legislation prohibiting particular conduct contain language that provides fair notice and warning and sets reasonably clear guidelines for those enforcing and adjudicating under the legislation. *See Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974); *Broadrick,* 413 U.S. at 607, 93 S.Ct. at 2913. The prohibitions must be "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). In reviewing the AEC for vagueness, "we must have clearly in mind the statutory prohibitions that we are examining." *U.S. Civil Service Commission v. Letter Carriers,* 413 U.S. 548, 568, 93 S.Ct. 2880, 2892, 37 L.Ed.2d 796 (1973).[6] Plaintiffs argue that three par-

---

6. The presence of criminal enforcement provisions in Resolution 67–92 of the AEC and the possible infringement of protected expressive activity—albeit protected conduct "marginally" within the "outer perimeters" of the First Amendment, *Barnes,* 501 U.S. at 565, 111 S.Ct. at 2460—requires us to demand a somewhat greater degree of specificity to pass constitutional muster. *United States v. Gaudreau,* 860 F.2d 357, 360 (10th Cir.1988). However, "a scienter requirement may mitigate a criminal law's vagueness by ensuring that it punishes only those who are aware their conduct is unlawful," *id.,* and Kansas law provides that all criminal provi-

sions, unless explicitly excepted by their terms, require proof of criminal intent as a necessary element. *State v. Jones,* 242 Kan. 385, 748 P.2d 839, 845 (1988). Criminal intent may be established by proof that a person's conduct was "willful," defined as "purposeful, intentional, and not accidental." *Id.* The presence of this element of scienter effectively overcomes the concerns of plaintiffs and the amicus that an accidental prohibited act, such as a patron accidentally brushing an employee's buttocks, could be punishable under the AEC. Clearly, that type

ticular provisions of the AEC are unconstitutionally vague; we deal with each in turn.

First, plaintiffs assert that the prohibition against acts which simulate sexual intercourse "leaves unclear at what point an expressive dance becomes a simulation of sexual intercourse." Appellants' Br. at 32. Plaintiffs point to testimony of a police detective that the prohibition would be difficult to enforce because almost all dancing simulates intercourse. They further quote the testimony of the Johnson County district attorney that "if somebody was dancing, for example, like Elvis used to dance and gyrating their pelvis, that probably wouldn't fit the confines, or I would [not] think that would fit the confines of the statute at all." Appellants' App. 100–01. Plaintiffs assert this testimony indicates that the prosecutor is not sure whether a certain type of dance fits under the language of the statute. We read the district attorney's testimony, however, as a rather clear statement that he did not think the example given would be prohibited by the statute "at all," *id.*, and also that he did not anticipate problems in enforcing the ordinance.

Plaintiffs also assert that the AEC language prohibiting displaying of buttocks "fails to specify at what point an individual's buttocks is displayed," Appellants' Br. at 33, and is thus too vague to give notice of what is prohibited. Although the AEC does not define buttocks, we believe the common understanding of the term supplies a clear enough standard by which one could avoid the prohibition. And we will not strike down legislation as vague when a court could "extrapolate [the AEC's] allowable meaning." *Geaneas,*[7] 911 F.2d at 586 (citing *Grayned v. Rockford,*

408 U.S. 104, 110, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (other citations omitted)).

Plaintiffs next assert that the AEC is vague in its attempt to prohibit "perform[ing] acts of or acts which constitute or simulate: the touching caressing or fondling of the breast [or] buttocks." Appellants' Br. at 34. They argue that the AEC does not specify whether the ordinance prohibits caressing or fondling these regions only if they are exposed or also if covered, and thus is too vague to prevent arbitrary enforcement. Although he could not define its scope in every possible application, plaintiffs' manager stated at trial that without legal counsel he read the AEC and instructed his dancers on both what they could wear and what activities were prohibited. Further, the local law enforcement officers' testimony, with one exception, indicated that the language provided adequate guidance on what activities and conduct are regulated.

Amicus Platinum Club offers additional inventive hypotheticals in an attempt to demonstrate the AEC's vagueness. Amicus argues that the AEC provision prohibiting display or simulated display of the "female breast below the top of the nipple" is vague because it is

equally amenable to at least two equally reasonable interpretations depending on whether the "top of the nipple" is construed to be the most cephalic point of the areola, (as might seem reasonable if for purposes of this section the subject person is to be viewed and analyzed while standing), or whether the top is construed as the most ventral point on the nipple, (as might seem reasonable if the subject person is to

---

of accidental incidental activity is not a violation of any provision before us.

**7.** The Eleventh Circuit in *Geaneas* found a challenged ordinance was not unconstitutionally vague, because the district court determined that the highest state court would define buttocks as the area at the rear of the body which lies between two imaginary lines running parallel to the ground when a person is standing, the first or top such line drawn at the top of the cleavage of the nates [i.e., the prominence formed by the muscles running from the back of the hip to the back of the leg] and the second or bottom line drawn at the lowest

visible point of this cleavage or the lowest point of the curvature of the fleshy protuberance, whichever is lower, and between two imaginary lines on each side of the body, which lines are perpendicular to the ground and to the horizontal lines described above, and which perpendicular lines are drawn through the point at which each note meets the outer side of each leg. The Ordinance would be violated, therefore, if any portion of this area is visible from any vantage point.

*Geaneas v. Willets,* 911 F.2d 579, 586–87 (11th Cir.1990) (quoting *Geaneas v. Willets,* 715 F.Supp. 334, 339 (M.D.Fla.1989)).

be viewed from a reclining or horizontal position).

Amicus Br. at 12–13. We agree with the defendants that this argument "ignores the common reference to the top of one's anatomy being in the vicinity of the head with a common understanding that the head does not change its relationship to the rest of the body if one lies down." Appellees' Br. at 31.

Amicus also contends that the AEC fails to explain whether exposure of only a portion of a part of the body which is not to be exposed would be prohibited. To the contrary, the AEC explicitly prohibits "displaying of post-pubertal human genitals, buttocks, or pubic area, or the female breast below the top of the nipple."

In sum, "although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *Broadrick*, 413 U.S. at 608, 93 S.Ct. at 2914. We do not find any of the provisions attacked in the district court to be so vague that they fail to give adequate warning of the activities proscribed, or fail to set out "explicit standards" for law enforcement to apply the AEC. *Id.* at 607, 93 S.Ct. at 2913 (quoting *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298).

### V

■ Although we affirm the district court's judgment in virtually every respect, we must remand for appropriate consideration and ruling on one issue that was presented to the district court and argued to us on appeal. In plaintiffs' complaint for declaratory judgment, they asserted rights under Resolution Number 67–92 *and* 68–92 which together comprise the AEC. *See* Plaintiffs' Compl.Decl.J. (Appellants' App. 18). Resolution 68–92 is a zoning statute, which, among other things, seems to forbid activities such as sexual intercourse and the displaying of human genitals or buttocks within 1000 feet of a club that serves alcohol.

Plaintiffs elicited testimony at trial in an attempt to prove that these provisions of the AEC are vague or overbroad. Plaintiffs' manager testified that a doorman lives upstairs from Dodger's and that the AEC would seem on its face to forbid him from having sexual intercourse with his girlfriend. A detective testified that the 1000–foot rule is "completely unenforceable" because homes, businesses, and cars could all be located within a short distance of Dodger's bar and be covered by the prohibitions in the AEC.

Having raised the issue in their complaint and presented evidence at trial, the plaintiffs, nonetheless, received no ruling from the district court on this issue. Instead, the district court concluded that although Resolutions 67–92 and 68–92 jointly comprise the AEC, the "instant dispute relates only to 67–92. . . . Resolution 68–92 is a zoning statute and is not relevant to this case." Dist.Ct.Op. at 4 (Addendum to Appellants' Br. at 4). Having read all the briefing and record material transmitted to us on appeal, we are uncertain why the district court did not address the issues raised by plaintiffs pertaining to the 1000–foot rule contained in 68–92. Given these circumstances, we will follow the general rule on an issue not passed upon in the lower court. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720 (10th Cir.1993). Accordingly, we do not evaluate the merits of plaintiffs' argument or offer any opinion as to the constitutionality of 68–92, but rather we remand to the district court for a ruling on this matter.[8]

IT IS SO ORDERED.

---

8. Defendants filed a motion to strike certain matter from plaintiffs' brief and from the brief of amicus curiae. To the extent those briefs and the appendix contain alleged factual matters not before the district court, we grant the motion. We have considered on appeal only what was in the record before the district court.