**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Carrie Renee GAUDREAU and Conrad Paul Gaudreau, aka Joseph Gaudreau, Defendants–Appellees.**

**Nos. 87–2428, 87–2432.**

United States Court of Appeals, Tenth Circuit.

Oct. 17, 1988.

Rehearing Denied Jan. 9, 1989.

Charles Szekeley, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., was also on the brief), for defendant-appellee Carrie Gaudreau.

Jeffrey S. English, Lakewood, Colo., for defendant-appellee Conrad Paul Gaudreau.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and David L. Saine, Asst. Atty. Gen., Denver, Colo., filed a brief, for the State of Colo., as amicus curiae.

Before HOLLOWAY, Chief Judge, and McKAY and TACHA, Circuit Judges.

HOLLOWAY, Chief Judge.

This appeal involves a constitutional challenge to Colorado's commercial bribery statute, Colorado Revised Statutes §§ 18–5–401(1)(a) and (1)(d) (1986), when used as a component of a RICO prosecution. The defendants-appellees Carrie and Joseph Gaudreau, the remaining defendants involved on this appeal, argue that the state statute's prohibition of a "knowing violation of a duty of fidelity" is unconstitutionally vague and therefore cannot form the basis of a racketeering charge. The district court agreed and dismissed the RICO counts of the indictment. 667 F.Supp. 1404. The government appeals. We reverse.

I.

Oscar Lee was variously Vice–President, Assistant Vice–President, and Executive Assistant Vice–President of the Electrical Production Division of Public Service Company of Colorado (Public Service). Superseding Indictment, Introduction, ¶ 1. In each of these positions Mr. Lee had the authority to approve contracts for the purchase of goods and services by the Electrical Production Division of Public Service. *Id.* at ¶ 24. Defendant Carrie Gaudreau was variously Secretary and Administrative Assistant to the Vice–President of the Electrical Production Division and Production Coordinator of Public Service. *Id.* at ¶ 3. Defendant Joseph Gaudreau, Carrie's

Gerald J. Rafferty, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., and Bruce F. Black, Asst. U.S. Atty., Denver, Colo., were also on the brief), for plaintiff-appellant.

father, was the manager of the Denver office of Zachary Industries, a supplier to Public Service. *Id.* at ¶ 4.

In essence, the indictment against the Gaudreaus alleges[1] that Mr. Lee and the Gaudreaus agreed that Mr. Lee would accept money in exchange for awarding Public Service contracts to certain suppliers, in violation of Colorado's commercial bribery statute. That statute provides:

(1) A person commits a class 5 felony if he solicits, accepts, or agrees to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which he is subject as:

(a) Agent or employee; or ...

(d) Officer ... of an incorporated association.

Colo.Rev.Stat. § 18–5–401 (1986).[2]

This alleged agreement between Mr. Lee and the Gaudreaus allegedly amounted to a conspiracy to conduct the affairs of Public Service through a pattern of racketeering activity[3] in violation of 18 U.S.C. § 1962(d), generally known as the Racketeer Influenced Corrupt Organizations Act (RICO).[4]

The Gaudreaus moved to dismiss the indictment on the ground that violations of the Colorado statute cannot serve as predicate acts for a RICO charge because the state statute is unconstitutionally vague

and thus violates the Due Process Clause of the Fourteenth Amendment. The district court held that:

Subsections (1)(a) and (1)(d) of the Colorado commercial bribery statute, C.R.S. § 18–5–401, are void for vagueness, both facially and as applied in this case. Because alleged violations of that statute are the predicate offense for the RICO violations, Counts One and Two of the indictment must be dismissed.

667 F.Supp. at 1414. The government appeals.

## II.

The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The same facets of a statute usually raise concerns of both fair notice and adequate enforcement standards. Hence the analysis of these two concerns tends to overlap. The Supreme Court, however, while recently recognizing the second concern as more important, continues to treat each as an element to be

---

**1.** At this stage of the case the allegations in the indictment must be taken as true. *Boyce Motor Lines v. United States,* 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332 n. 16, 96 L.Ed. 367 (1952).

**2.** Colorado's commercial bribery statute duplicates the commercial bribery statute proposed by the American Law Institute in Model Penal Code § 228.4 (1980), except for the important difference that the Model Penal Code proposes misdemeanor penalties and a violation of the Colorado statute is a felony.

Similar commercial bribery statutes have been uniformly upheld in the face of vagueness challenges. *See United States v. Perrin,* 580 F.2d 730, 735 (1978); *Ex Parte Mattox,* 683 S.W.2d 93 (Tex.App. 3 Dist.1984); *State v. Brewer,* 258 N.C. 533, 129 S.E.2d 262, 277 (1963), *appeal dismissed for want of a substantial federal question,* 375 U.S. 9, 84 S.Ct. 72, 11 L.Ed.2d 40 (1963); *People v. Nankervis,* 330 Mich. 17, 46 N.W.2d 592, 595 (1951).

**3.** The Superseding Indictment, Count 2, ¶ 2 alleges that Mr. Lee and the Gaudreaus "did knowingly combine, conspire, confederate and

agree together ... to conduct and participate, directly and indirectly, in the conduct of [Public Service's] affairs through a pattern of racketeering activity...."

**4.** 18 U.S.C. § 1962(d) provides: "It shall be unlawful for any person to conspire to violate ... [18 U.S.C. § 1962(c) ]."

18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by ... any enterprise engaged in, or the activities of which affect, interstate ... commerce, to conduct or participate, directly or indirectly, in the the conduct of such enterprise's affairs through a pattern of racketeering activity...."

18 U.S.C. § 1961(5) defines "pattern of racketeering activity" to require at least two acts of racketeering activity.

18 U.S.C. § 1961(1) defines "racketeering activity" as "any act ... involving ... bribery ... which is chargeable under state law and punishable by imprisonment for more than one year."

Colo.Rev.Stat. § 18–1–105(1)(a) (1986) makes commercial bribery, a class 5 felony, punishable by one to two years' imprisonment.

analyzed separately. *See id.* at 357–58, 103 S.Ct. at 1858.

The degree of specificity which the Constitution demands depends on the nature of the statute. Criminal statutes must be more precise than civil statutes because the consequences of vagueness are more severe.[5] Further, a scienter requirement may mitigate a criminal law's vagueness by ensuring that it punishes only those who are aware their conduct is unlawful.[6] Also, regulatory statutes governing business activities may be less precise because the conduct proscribed is usually in a narrow category and the regulated enterprise may have the ability to clarify the meaning of the regulation by inquiring of an administrative agency or resort to an administrative process.[7] Finally, the Constitution demands more clarity of laws which threaten to inhibit constitutionally protected conduct, especially conduct protected by the First Amendment.[8] The defendants have not argued, nor do we perceive, that the Colorado commercial bribery statute threatens to chill constitutionally protected conduct. Nevertheless, the statute imposes criminal penalties and is not merely a business regulation. "[C]riminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963).

We address two preliminary issues. The Gaudreaus argue that the statute is unconstitutional on its face and as applied to them. Their facial challenge is inappropriate. Facial challenges are proper in two circumstances. First, a statute may be challenged on its face when it threatens to chill constitutionally protected conduct,[9] especially conduct protected by the First Amendment. If a statute is so vague that it can reasonably be interpreted to prohibit constitutionally protected speech as well as conduct the state may constitutionally forbid, people may choose to refrain from speaking rather than challenge the statute's constitutionality in their criminal prosecution. Thus, freedom of speech will be chilled. We allow a person who is prosecuted for conduct which the state may constitutionaly forbid to challenge the statute as vague on its face, rather than restricting him to challenging it as applied to his conduct, because those who refrain from speech will never have a chance to make their claims in court. In this way the claims of those who would be silenced are heard. Vagueness and overbreadth challenges are similar in this respect. *Kolender*, 461 U.S. at 358–59 n. 8, 103 S.Ct. at 1859 n. 8.

Second, a facial challenge to the constitutionality of a statute may in some instances be appropriate on pre-enforcement review. In a declaratory judgment action no one

5. *Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948); *see also Kolender,* 461 U.S. at 359 n. 8, 103 S.Ct. at 1859 n. 8.

6. *Screws v. United States,* 325 U.S. 91, 101–04, 65 S.Ct. 1031, 1035–37, 89 L.Ed. 1495 (1945) (plurality opinion).

7. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1981); *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *see also Joseph Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 49, 86 S.Ct. 1254, 1263, 16 L.Ed.2d 336 (1966); *McGowan v. Maryland,* 366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961).

8. *Grayned v. City of Rockford,* 408 U.S. 104, 109 n. 5, 92 S.Ct. 2294, n. 5, 33 L.Ed.2d 222 (1972); *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1322–23, 12 L.Ed.2d 377 (1964); *United*

*States v. National Dairy Products Corp.,* 372 U.S. 29, 36, 83 S.Ct. 594, 599–600, 9 L.Ed.2d 561 (1963); *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 217–18, 4 L.Ed.2d 205 (1959); *Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948).

9. *Colautti v. Franklin,* 439 U.S. 379, 390–91, 394, 396, 99 S.Ct. 675, 683, 685, 686, 58 L.Ed.2d 596 (1979) (statute subjecting doctors to criminal liability if they fail to use certain abortion procedures when the fetus is viable or there is sufficient reason to believe that the fetus may be viable held unconstitutionally vague on its face); *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) (statute making it a crime to be a "gangster"—"a member of any gang consisting of two or more persons," who has been convicted for certain prior offenses—held facially void for vagueness).

has been charged so the court cannot evaluate the statute as applied. In these cases, the challenger may attempt to facially attack the statute as "vague in all of its applications." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). If a statute is vague in all its applications then it will necessarily be vague "as applied" in every case. The statute would thus be void on its face. On the other hand, since the Colorado statute challenged here does not threaten to chill constitutionally protected conduct, and has been applied to the challengers, we hold that we must examine the statute as applied for vagueness in light of the conduct with which the Gaudreaus are charged.[10]

■ As for the second preliminary issue, a federal court evaluating a vagueness challenge to a state law must read the statute as it is interpreted by the state's highest court.[11] In *People v. Lee*, 717 P.2d 493, 496 (Colo.1986), the Colorado Supreme Court interpreted the statute's phrase "duty of fidelity" to mean "duty of loyalty" as the term has been defined at common law.[12] We therefore evaluate the statute for vagueness in light of that interpretation.[13]

## A. Fair Notice

We turn now to the first element of our vagueness analysis, the fair notice question. The Supreme Court has stated the test as follows: "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is pro-

---

**10.** *Flipside*, 455 U.S. at 494–95, 102 S.Ct. at 1191; *United States v. Powell*, 423 U.S. 87, 92–93, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975); *Mazurie*, 419 U.S. at 550, 95 S.Ct. at 714; *National Dairy*, 372 U.S. at 32–33, 36, 83 S.Ct. at 599–600; *Robinson v. United States*, 324 U.S. 282, 285–86, 65 S.Ct. 666, 668–69, 89 L.Ed. 944 (1945); *United States v. Hines*, 696 F.2d 722, 727 (10th Cir.1982) (Oklahoma commercial gambling statute upheld against vagueness challenge and "appellants lack[ed] standing to attack the statute on the basis that it might be unconstitutionally vague as applied to the conduct of others").

**11.** *Flipside*, 455 U.S. at 494 n. 5, 102 S.Ct. at 1191; *Wainwright v. Stone*, 414 U.S. 21, 22–23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973) ("For the purpose of determining whether a state statute is too vague and indefinite ... we must take the statute as though it read precisely as the highest court of the State has interpreted it.").

**12.** Defendants argue that this limiting construction has no relevance to their vagueness challenge because *Lee* was evaluating a charge that the law impermissibly allowed the person to whom the duty is owed unfettered discretion in defining the duty.

The concern which underlay the improper delegation attack in *Lee* (that duty of fidelity is too subjective a term upon which to base criminal liability) is similar to the argument, which defendants make in this case, that the law does not give fair notice and provides excessive opportunities for arbitrary and discriminatory enforcement. Therefore, we think the limiting construction placed upon the statute in *Lee* must be respected in this case.

**13.** The Superseding Indictment alleges that Mr. Lee held various positions as an officer of Public Service and as Manager of its Electrical Production Division. Superseding Indictment, Introduction, ¶ 1. The Colorado Supreme Court has held that a director's duty of loyalty to his corporation is defined by the law of the state of incorporation. *Great Western Producers Co-Operative v. Great Western United Corporation*, 200 Colo. 180, 613 P.2d 873, 878 n. 4 (Colo.1980). Subsequently, however, the Colorado Court applied Restatement (Second) of Conflict of Laws § 309 (1971), which states the rule that:

> The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship....

*See Ficor, Inc. v. McHugh*, 639 P.2d 385, 391 (Colo.1982) (Colorado law held to govern rights and duties between directors and officers of District of Columbia corporation and corporation's creditors because virtually all of corporation's activities were conducted in Colorado and all of its assets were located there). Public Service was incorporated in Colorado. *Public Service Company of Colorado v. Blue River Irrigation Co.*, 753 P.2d 737 (1988). The Superseding Indictment alleges that at all times material to the indictment Mr. Lee was a resident of Brighton, Colorado, I R. Item 2 at 3, and that all of Mr. Lee's racketeering acts contemplated by the conspiracy occurred in Colorado. I R. Item 2 at 13, 17–18. Thus it seems clear that Colorado law defines Mr. Lee's duty of loyalty and the briefs of the parties have not suggested the applicability of any other law.

hibited...." *Kolender*, 461 U.S. at 357, 103 S.Ct. at 1858.

The Gaudreaus argue that the statute did not give them fair notice that their conduct was prohibited because they could have discovered that Mr. Lee's duty of loyalty forbade him from taking bribes only by consulting cases, other statutes, and treatises. They say that while the statute may give notice to an ordinary lawyer, it does not give notice to an ordinary layman. Defendant Carrie Gaudreau argues that *"the language contained in the statute itself must define the crime."* Brief of Appellee Carrie Gaudreau at 13 (emphasis in original).

Such broad arguments are foreclosed by decisions of the Supreme Court. The Court has consistently held statutes sufficiently certain when they employ words or phrases with "a well-settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ...." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 128, 70 L.Ed. 322 (1926).[14]

As discussed above, we evaluate Carrie and Joseph Gaudreau's vagueness challenges in light of the conduct with which they are charged: conspiring with Mr. Lee to engage in a pattern of commercial bribery. Although the prosecution has directed us to no Colorado cases or statutes specifically addressing this issue, the authorities are unanimous that an officer or agent breaches his duty of loyalty to his corporation or principal by accepting bribes to compromise his principal's interests. Fletcher, Cyclopedia of Corporations, § 884 states:

Since the directors and other officers of a corporation occupy a fiduciary or quasi-trust relation toward the corporation and the stockholders collectively, they cannot, either directly or indirectly, in their dealings on behalf of the corporation with others, or in any other transaction in which they are under a duty to guard the interests of the corporation, make any profit, or acquire any other personal benefit or advantage, not also enjoyed by the other stockholders. [S]tated in its most general form, *the rule is that directors or other officers of a corporation cannot make a personal profit out of their office.* (Emphasis added).

Similarly, the Restatement (Second) of Agency explains that an agent owes a duty of loyalty to his principal which requires him to refrain from acting on behalf of an adverse party,[15] and to turn over profits he makes,[16] in connection with transactions he handles on behalf of the principal. Consequently, in the context of the Gaudreaus' alleged conduct, the Colorado statute and the common law meaning of "duty of loyalty" provide constitutionally sufficient notice that Mr. Lee's acceptance of bribes in his dealings on behalf of Public Service

**14.** *See also Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) ("crimes against nature" sufficiently defined to include conduct of defendant in light of prior state court decisions); *Nash v. United States*, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913) (Sherman Act's criminal prohibition of conspiracy in restraint of trade, adopting common law interpretation, valid); *Screws*, 325 U.S. at 103–05, 65 S.Ct. at 1036–37 (plurality opinion upholding civil rights criminal prohibition of willful deprivation of constitutional rights, as made specific by express terms of the Constitution or decisions interpreting them); *but cf. International Harvester v. Kentucky*, 234 U.S. 216, 223, 34 S.Ct. 853, 855–56, 58 L.Ed. 1284 (1914). For criticism of the Court's application of the fair notice requirement *see* John Calvin Jeffries, Jr., *Legality, Vagueness, and Construc-*

*tion of Penal Statutes*, 71 Va.L.Rev. 189, 205–12 (1985).

**15.** "Unless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency without the principal's knowledge." Restatement (Second) of Agency, § 391 (1958).

**16.** "Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profits to the principal." Restatement (Second) of Agency, § 388 (1958). *See Byer v. International Paper Co.*, 314 F.2d 831 (10th Cir.1963) (manager of lumber yard held liable for kickbacks he received in exchange for extending credit of employer to a customer).

would violate the statute.[17]

■ Additionally, the Supreme Court has recognized that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed...." *Flipside,* 455 U.S. at 499, 102 S.Ct. at 1193; *see e.g., Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979); *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 342, 72 S.Ct. 329, 331–32, 96 L.Ed. 367 (1952); *Screws v. United States,* 325 U.S. 91, 101–03, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945); *see also Murphy v. Matheson,* 742 F.2d 564, 573–74 (10th Cir.1984); *M.S. News Co. v. Casado,* 721 F.2d 1281, 1290 (10th Cir.1983); *United States v. Salazar,* 720 F.2d 1482, 1485–86 (10th Cir.1983), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985).[18] The Colorado statute prohibits enumerated classes of people from "knowingly violating or agreeing to violate a duty of fidelity...." The type of scienter which the prosecution must prove is precisely the type that overcomes the objection that the Colorado statute may punish without fair warning to the accused;[19] the prosecution must prove beyond a reasonable doubt that he knew his duty of fidelity and knew he was violating it.[20]

Further, the Colorado commercial bribery statute requires proof that the accused accepted a "benefit as consideration" for violating his duty of fidelity in order to establish a violation. The statute prohibits bribery, a concept well-understood by the ordinary person. Although an ordinary agent or corporate officer may not know exactly the outer boundaries of his duty of loyalty in other contexts, when he accepts money or property for compromising the interests of his principal he should know that he is violating the statute.

We hold, therefore, that the Colorado commercial bribery statute provides sufficient notice that the conduct contemplated by the alleged conspiracy between the Gaudreaus and Mr. Lee is prohibited so as to serve as predicate acts for this RICO prosecution.

### B. Enforcement Standards

We now address the second element of our vagueness analysis, the adequacy of the enforcement standards. Due process requires that legislation state reasonably clear guidelines for law enforcement officials, juries, and courts to follow in discharging their responsibility of identifying and evaluating allegedly illegal conduct.[21]

17. Laws cannot define the boundaries of impermissible conduct with mathematical certainty. "Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk. *Nash v. United States,* 229 U.S. 373 [33 S.Ct. 780]." *United States v. Wurzbach,* 280 U.S. 396, 399, 50 S.Ct. 167, 169, 74 L.Ed. 508 (1930).

18. "[T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid.... The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." *Screws,* 325 U.S. at 101–02, 65 S.Ct. at 1035–36 (quoted in *Colautti,* 439 U.S. at 395 n. 13, 99 S.Ct. at 685 n. 13).

19. "[I]t is evident that ... the 'scienter' [which mitigates vagueness] must be some other kind

of scienter than that traditionally known to the common law—the knowing performance of an act with the intent to bring about that thing, whatever it is, which the statute proscribes, knowledge of the fact that it is so proscribed being immaterial.... Such scienter would clarify nothing; a clarificatory 'scienter' must envisage not only a knowing what is done but a knowing that what is done is unlawful or, at least so wrong that it is probably unlawful." Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 87 n. 98 (1960) (cited in *Flipside,* 455 U.S. at 499 n. 14, 102 S.Ct. at 1193 n. 14).

20. To convict the Gaudreaus of conspiracy the prosecution will be required to prove that the Gaudreaus knew Mr. Lee's duty of loyalty and knew that their agreement encompassed its violation.

21. *Kolender,* 461 U.S. at 357–58, 103 S.Ct. at 1858; *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298–99; *Smith v. Goguen,* 415 U.S. 566, 574–75, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974); *United States v. Cohen Grocery Co.,* 255 U.S. 81,

Criminal statutes that fail to provide minimal guidelines may permit "a standardless sweep [that] allows policemen, prosecutors and juries to pursue their personal predilections." *Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858 (quoting *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)); *Papachristou v. Jacksonville*, 405 U.S. 156, 165, 92 S.Ct. 839, 845, 31 L.Ed.2d 110 (1972).

The Gaudreaus argue that the term "duty of loyalty" fails to specify any standard of conduct at all; it "simply has *no* core," citing *Smith v. Goguen*, 415 U.S. at 578, 94 S.Ct. at 1249-50 (1974), and *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). We disagree. In *Coates* the Court held unconstitutionally vague a statute criminalizing acts of three or more persons assembling on any sidewalk who "there conduct themselves in a manner annoying to persons passing by...." The statute was impermissibly vague because whether or not a person's behavior is "annoying" depends entirely upon the subjective judgment of the "persons passing by," or any police officer. As the Court said, "[t]he ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." 402 U.S. at 614, 91 S.Ct. at 1688. Similarly, in *Smith* the Court held invalid a statute imposing criminal liability on one who, *inter alia*, "publicly ... treats contemptuously the flag of the United States...." Again the statute was held impermissibly vague because the standard depended on nothing more than the preference of the police, the court, and the jury for treatment of the flag. 415 U.S. at 578, 94 S.Ct. at 1249-50.[22]

■ The Colorado commercial bribery statute does not create this kind of potential for abuse. In contrast to the statutes in *Smith* and *Coates*, the Colorado statute provides sufficiently clear, objective standards to satisfy due process. First, the duty of loyalty owed by an agent to his principal, in particular the duty of loyalty owed by a corporate officer to his corporation, is objectively defined in the common law and clearly prohibits an agent from accepting bribes to compromise his principal's interests.[23] Second, the Colorado statute requires the prosecution to show that the accused accepted a "benefit as consideration" for breaching his duty. Whether or not an agent received or agreed to receive money or property as consideration for breaching his duty of loyalty is an objectively verifiable element of the crime.

In sum, the Colorado commercial bribery statute provides sufficient enforcement standards to satisfy "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858 (quoting *Smith*, 415 U.S. at 574, 94 S.Ct. at 1248).

### III.

Accordingly, the order of the district court dismissing the RICO counts of the Superseding Indictment is REVERSED and

---

89, 41 S.Ct. 298, 300, 65 L.Ed. 516 (1921); *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1876).

**22.** *See also Kolender*, 461 U.S. at 360-61, 103 S.Ct. at 1859-60, (statute requiring persons to provide "credible and reliable" identification to police held unconstitutionally vague because the credibility and reliability of identification was determined by the subjective judgment of police).

**23.** We note that the Superseding Indictment, Introduction, ¶ 27 asserts that Mr. Lee and Carrie Gaudreau were bound by their duty of loyalty to adhere to Public Service's employee manual. The government, however, abandoned such reliance on the manual at oral argument in the district court. Supp. II R. 32.

The Colorado Supreme Court specifically held in *People v. Lee*, 717 P.2d 493, 496 (Colo.1986), that the statute prohibits violations of an agent's or corporate officer's duty of loyalty as defined by the common law, not as defined by his employer. The references to Public Service's employee manual, therefore, may be relevant only as they may tend to show it is more probable than not that Carrie Gaudreau knew of Mr. Lee's common law duty of loyalty to Public Service.

the case is REMANDED for further proceedings.