UNITED STATES of America,
Plaintiff,

v.

Thomas K. WELCH and David
R. Johnson, Defendants.

No. 2:00–CR–0324–S.

United States District Court,
D. Utah,
Central Division.

Aug. 9, 2001.

Richard N. Wiedis, John W. Scott, Richard A. Friedman, Washington, DC, for Plaintiff.

William W. Taylor III, Washington, DC, Max D. Wheeler, Salt Lake City, UT, Michael Goldsmith, for Defendant or Respondent.

1. Pursuant to 28 U.S.C. § 636(b)(1)(B) and this court's order, the case was referred to the magistrate judge.

2. The magistrate judge addressed defendants' motion to dismiss in two separate R & Rs.

## MEMORANDUM OPINION

SAM, Senior District Judge.

### I. INTRODUCTION

On July 16, 2001, the court issued a brief order granting defendants' motion to dismiss counts 2 through 5 of the indictment against them which purported to charge violations of the federal Travel Act, 18 U.S.C. § 1952. The court issued that order for the reasons more fully explained in this Memorandum Opinion.

Defendants Thomas K. Welch and David R. Johnson served as President and Senior Vice President, respectively, of the Salt Lake City Bid Committee for the Olympic Winter Games ("SLBC") and its successor organization, the Salt Lake Organizing Committee for the 2002 Olympic Winter Games ("SLOC"). SLBC was organized to seek the right from the International Olympic Committee ("IOC") to host the Olympic Winter Games in Utah. SLOC was formed to facilitate hosting the 2002 Olympic Winter Games after Salt Lake City was elected as host city in 1995.

On July 20, 2000, defendants were charged in a 15–count indictment with conspiracy, violations of the Travel Act, mail and honest services fraud, and wire and honest services fraud allegedly arising from their efforts to win and host the Olympic Winter Games. Defendants subsequently moved to dismiss all counts of the indictment for failure to state an offense.

On June 8, 2001, the magistrate judge[1] issued his Report and Recommendation ("R & R") to this court recommending that defendants' motion to dismiss counts 2 through 5 be denied.[2] The court rejected

The June 8, 2001 R & R relates to the Travel Act counts only.

that recommendation and granted defendants' motion with respect to the Travel Act counts.

## II. MOTION TO DISMISS STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure allows for consideration, at the pretrial stage, of any defense "which is capable of determination without the trial of the general issue." Defendants raise the defense of a defective indictment. *See* Fed.R.Crim.P. 12(b)(2).

■ An indictment is sufficient to withstand a motion to dismiss "if it (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir.1994). In considering a motion to dismiss, the "indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id.*

## III. DISCUSSION

### A. UTAH CODE § 76–6–508 IS NOT A VALID TRAVEL ACT PREDICATE IN THIS CASE

■ For the reasons that follow, the court concludes as a matter of law that Utah Code § 76–6–508 ("Section 76–6–508"), upon which the indictment relies to define the alleged unlawful conduct of defendants, is not a valid predicate for purposes of the Travel Act charges against defendants in this case. With respect to the Travel Act counts, the indictment, therefore, is defective because it fails to state an offense.

■ The Travel Act proscribes the use of interstate facilities in furtherance of illegal activity. Counts 2 through 5 of the indictment allege that defendants violated the Travel Act by bribing various IOC members in violation of Section 76–6–508.[3] The elements of a Travel Act violation are: "(1) travel or use of facilities in interstate commerce; (2) with intent to promote[,] manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of a prohibited activity—e.g., bribery; and (3) subsequent attempt to commit or actual commission of the proscribed activity." *United States v. Davis*, 965 F.2d 804, 809 (10th Cir.1992), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993).

Prohibited or unlawful activity as defined by the Travel Act includes "bribery ... in violation of the laws of the State in which committed or of the United States ...." 18 U.S.C. § 1952(b)(2). The government relies on Utah law, Section 76–6–508, to define the illegal acts defendants are alleged to have committed. Section 76–6–508, the commercial bribery statute cited in the indictment, provides in relevant part as follows:

3. Specifically, the indictment alleges that defendants

aided and abetted by each other did travel in interstate and foreign commerce and use and cause to be used a facility in interstate and foreign commerce ... with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an **unlawful activity, to wit: bribery of various IOC**

members in violation of Title 76, Utah Criminal Code, Section 76–6–508, and thereafter performed and attempted to perform and caused the performance of an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of said unlawful activity.

Indictment, p. 30 ¶ 2 (emphasis added).

(1) A person is guilty of a class A misdemeanor when, without the consent of the employer or principal, contrary to the interest of the employer or principal:

(a) he confers, offers, or agrees to confer upon the employee, agent, or fiduciary of an employer or principal any benefit with the purpose of influencing the conduct of the employee, agent, or fiduciary in relating to his employer's or principal's affairs ....

An analysis of Section 76-6-508 in the context of the history and purpose of the Travel Act, interpretative Supreme Court opinion, lack of state prosecution, prior state application, and under the unique circumstances presented mandates the conclusion that Utah's commercial bribery statute is not a valid predicate for a prosecution in this instance.

### 1. Legislative History

The Travel Act was part of Attorney General Robert F. Kennedy's legislative program to fight organized crime and racketeering. *Rewis v. United States,* 401 U.S. 808, 811 n. 6, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). In 1961, Attorney General Kennedy testified before the Senate Judiciary Committee, in part, as follows:

The **target clearly is organized crime**. The travel that would be banned is travel "in furtherance of a **business enterprise**" which involves gambling, liquor, narcotics, and prostitution offenses or extortion or bribery. Obviously, we are not trying to curtail the **sporadic, casual involvement** in these offenses, but rather a continuous course of conduct sufficient for it to be termed a business enterprise.

Our investigations also have made it quite clear that only the Federal Government can shut off the funds which permit the **top men of organized crime** to live far from the scene and, therefore, remain **immune from local officials**. *Id.* (citation omitted) (emphasis added). The Senate Committee Report endorsing adoption of the Travel Act stated: " 'Because many rackets are conducted by highly organized syndicates whose influence extends over State and National borders, the Federal Government should come to the aid of local law enforcement authorities in an effort to stem such activity.' " *United States v. Nardello,* 393 U.S. 286, 291, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969) (citation omitted).

Federal prosecution of this case based upon Utah law does not advance the goals of the Travel Act. Congress enacted that legislation to assist states in enforcing their laws against participants in organized crime who use state boundaries to avoid prosecution. *Rewis,* 401 U.S. at 811, 91 S.Ct. 1056. A fair reading of the indictment does not reflect that defendants are members of a criminal business enterprise, an organized syndicate or a "crime family." It is not alleged that they are involved in crime as a continuous course of conduct, nor that they depend upon the fruits of crime for their livelihood, nor that they are eluding local authorities. The court takes judicial notice that Utah has elected not to prosecute defendants for any state law violation. Nevertheless, the federal government is attempting unilaterally to "aid" Utah in enforcing a Utah law under circumstances which defy characterization as "organized crime." Such action is contrary to the purpose of the Travel Act. *See United States v. Ferber,* 966 F.Supp. 90, 106 (D.Mass.1997). *See also Rewis,* 401 U.S. at 811–12, 91 S.Ct. 1056.

### 2. Supreme Court Opinion

 In examining the relationship between state law and the Travel Act, the United States Supreme Court has established several principles this court must follow. First, bribery criminalized under

state law may serve as a valid predicate for a Travel Act violation. *Perrin v. United States*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). Second, the legislative history and statutory language of the Travel Act do not support a broad interpretation that would "alter sensitive federal-state relationships." *Rewis*, 401 U.S. at 812, 91 S.Ct. 1056.[4] Third, when applying state statutes for purposes of defining unlawful conduct under the Travel Act, "the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the [relevant] activity charged." *Nardello*, 393 U.S. at 295, 89 S.Ct. 534. These opinions suggest that a state bribery statute may provide a basis for a Travel Act violation as long as the conduct alleged is unlawful under the state law. The cases further suggest that neither the history nor the language of the Travel Act would sanction an expansive interpretation that would jeopardize the balance of powers between the state and federal governments when a continuous course of organized criminal conduct is not present and when there is no state enforcement to reinforce.

### 3. Prior Utah Case Law

Section 76–6–508 has been used rarely. It has never been applied in a reported case to a situation other than that generally encompassed in a commercial kickback scheme in which an employee in a position of control and in exchange for a "bribe" acted to the alleged detriment of his employer.[5] Of the reported cases, only one, which was split into two cases for trial, was a criminal prosecution. Defendants' alleged conduct in attempting to win IOC votes bears little resemblance to those commercial settings where the statute has been applied.

Seeking and hosting the Olympic Games are unique cultural, social, political, and commercial endeavors. In competing with other prospective host cities, a bid city obviously wishes to persuade the IOC through its members of its merits and potential as a host city for the Games. The court takes judicial notice that this lobbying effort has been accomplished in modern times by competing cities entertaining IOC members and promoting their geographic and structural attributes. The few prior commercial bribery cases in Utah are easily distinguished from this situation in which efforts were taken in competition with other cities of the world to persuade an international sports federation through its members to grant the winning city the right to host sporting events. Perhaps the most significant difference between this case and prior Utah

---

**4.** In *Perrin*, the Court distinguished *Rewis* noting that there the concern was with "the tenuous interstate commerce element." *Perrin*, 444 U.S. at 50, 100 S.Ct. 311. The Court observed that when an interstate nexus was present and "in order to reinforce state law enforcement," Congress intended to alter the federal-state balance of power. *Id.* Such is not the case here. *See infra* note 7.

**5.** *See, e.g., Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1289 (Utah 1993) (Section 76–6–508 applied to kickbacks paid to employees of company in the business of purchasing and reselling steel to induce employees to cause company to pay inflated prices to purchase steel from payor of kickbacks); *State v. Thompson*, 751 P.2d 805, 806 (Utah App. 1988), *rev'd on other grounds*, 810 P.2d 415 (Utah 1991) (Section 76–6–508 applied in criminal context to kickback payments employee received from payor in exchange for causing his employer to award non-competitive security contract to the payor); *State v. Fletcher*, 751 P.2d 822 (Utah App.1988) (same); *KUTV, Inc. v. Motor Sales, Inc.*, 546 P.2d 239 (Utah 1976) (Section 76–6–508 used in unsuccessful challenge by employer contesting charges for advertising services where employer's employees accepted expense-free trips for purchasing certain amount of advertising).

cases is that the latter involved alleged detriment to the employer, whereas here there is no allegation that IOC members voting for Salt Lake City to host the Olympic Winter Games poses any disadvantage to the IOC.

### 4. No State Prosecution

The language of Section 76–6–508 arguably can be read to extend to the conduct alleged here. However, the fact that Utah has never charged anyone for conduct similar to that alleged in this case, and the fact that Utah prosecutors have elected not to prosecute defendants under Utah law suggests that Utah does not view such conduct as a prosecutorial priority, or even a crime.[6] That was the case in *United States v. Ferber*, 966 F.Supp. 90, 106 (D.Mass.1997), where the fact that criminal enforcement of Massachusetts' gratuity statute had never extended to anyone situated as Mr. Ferber, led the court to conclude Massachusetts had made a policy decision that the conduct alleged was not a violation of Massachusetts' statute. The court, therefore, found that the Massachusetts statute was not a valid Travel Act predicate. *Id.* In short, uncertainty over a law's application, as is the case here, "renders it an inappropriate basis for criminal charges." *United States v. D'Alessio*, 822 F.Supp. 1134, 1135 (D.N.J.1993). Section

76–6–508, therefore, is not a proper basis for a valid Travel Act prosecution.

### 5. Balance of Power

■ The federal government has enumerated powers which are few and defined. U.S. Const., Art. 1, § 8; *United States v. Lopez*, 514 U.S. 549, 552, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). "[A] healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). "[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance." *United States v. Bass*, 404 U.S. 336, 349, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). *See also Jones v. United States*, 529 U.S. 848, 858, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). Under the specific circumstances presented, the court concludes that this Travel Act prosecution of defendants threatens the balance of power between the federal government and the State of Utah.[7] Utah has elected not to prosecute defendants under Section 76–6–508. There is no identifiable reason in this case justifying federal assistance under the Travel Act. *See Rewis*, 401 U.S. at 811–

---

**6.** Any suggestion that like behavior has not been prosecuted because it has never come up before reflects the novelty of this case and ignores Utah's decision not to prosecute in this instance.

**7.** The court acknowledges that in *Perrin* the Supreme Court noted that "so long as the requisite interstate nexus is present, the [Travel Act] reflects a clear and deliberate intent on the part of Congress to alter the federal-state balance in order to reinforce state law enforcement." *Perrin*, 444 U.S. at 38, 100 S.Ct. at 311. The court sees no conflict between its conclusion here and the foregoing statement in *Perrin* because there is no state law enforcement to "reinforce." The clear holding

of *Perrin* is that Congress intended the Travel Act to include violations of state bribery laws. *Perrin*, 444 U.S. at 50, 100 S.Ct. 311. Utah has elected not to prosecute defendants for violation of its bribery statute. Defendants are not avoiding state prosecution. Moreover, the state law at issue has never been applied as the government is attempting to do here and it is of doubtful application. The court has previously concluded that Utah's bribery statute is unconstitutionally vague and ambiguous with respect to defendants. In short, the government's prosecution of defendants in reliance on Utah's commercial bribery law is impermissibly contrary to the stated intentions of Congress.

812, 91 S.Ct. 1056; *Ferber*, 966 F.Supp. at 106.

In reaching its decision, the court shares the *Ferber* court's concerns over uninvited federal intrusion into state criminal prosecutions. Under our legal system, states generally determine how their criminal laws are enforced.[8] Federal prosecutors, thus, must exercise appropriate restraint in pursuing a case that relies on new or strained applications of state law. A federal criminal prosecution, where an individual's reputation and liberty are at stake, is not the place to experiment with novel interpretations of state law. These concerns are heightened where, as here, the state has no interest in prosecuting defendants under the very state law co-opted by the federal government. Moreover, the conduct alleged simply does not fit the mold of organized crime which the Travel Act was passed to combat. However well-intentioned, federal prosecutors are misguided in attempting to fit the proverbial round peg into a square hole. The Travel Act must not be stretched beyond its purposes to facilitate an improbable expansion of state law under the guise of assisting Utah. Apparently Utah sees no need for enforcement. Utah has elected not to enforce its law, and has requested no assistance in enforcement of its law. *See, e.g., Ferber*, 966 F.Supp. at 106–107.

## B. UTAH CODE § 76–6–508 IS UNCONSTITUTIONALLY VAGUE AS APPLIED IN THIS CASE TO THESE DEFENDANTS

In addition to finding Section 76–6–508 an invalid basis for the Travel Act counts, the court concludes as a matter of law that the language of the Utah statute does not put defendants on notice that their bid-seeking efforts were prohibited. The statute also is susceptible to arbitrary enforcement. Section 76–6–508, therefore, is unconstitutionally vague as applied in this case.[9]

Whether defendants violated the Travel Act turns on whether their alleged conduct is characterized as illegal under Section 76–6–508. If it is not, or if the statute fails for any reason, then the Travel Act counts cannot stand. The court agrees with defendants that neither the language of Section 76–6–508 nor its prior application gave them reasonable notice that their alleged actions were proscribed. The question presented by defendants' motion, therefore, is whether Utah's commercial bribery statute gave them fair warning, in reasonably clear language, that it was criminal to offer inducements and gifts to IOC members to persuade them to vote for Salt Lake City as host for the 2002 Olympic Winter Games. The answer lies in the

---

**8.** *See, e.g., Martin v. Ohio*, 480 U.S. 228, 232, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (where Court "emphasized the preeminent role of the States in preventing and dealing with crime and the reluctance of the Court to disturb a State's decision with respect to the definition of criminal conduct and the procedures by which the criminal laws are to be enforced in the courts").

**9.** A statute can be unconstitutionally vague on its face or as applied. *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir.1988). Defendants have not argued that Utah's commercial bribery statute interferes with constitutionally-protected behavior and is, thus, impermissibly vague on its face. The court,

likewise, does not view this as a facial challenge. Vagueness challenges, such as this, that do not implicate First Amendment rights or where the law in question does not "chill constitutionally protected conduct" are examined in light of the specific facts or allegations in question. *Id.* at 360–361; *United States v. Powell*, 423 U.S. 87, 92–93, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). The court, therefore, evaluates defendants' vagueness challenge in light of the conduct with which they are charged, bribery of various IOC members in violation of Utah's commercial bribery statute.

application of time-tested principles of due process.

■■■ Due process in a criminal law context demands "what Justice HOLMES spoke of as 'fair warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.'" *United States v. Lanier*, 520 U.S. 259, 265, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (quoting *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931)). In *Lanier*, a unanimous Supreme Court instructed that the right to "fair warning" applies in three contexts:

> There are three related manifestations of the fair warning requirement. **First**, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." . . . **Second**, as a sort of "junior version of the vagueness doctrine", . . . the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. . . . **Third**, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, . . . due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. . . . In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.

*Lanier*, 520 U.S. at 266, 117 S.Ct. 1219 (citations omitted) (emphasis added).

### 1. Vagueness Doctrine

The rationale for the vagueness doctrine has been articulated by the Supreme Court and often reiterated as a two-part test. "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited. . . . Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Such standards allow men to act with sufficient latitude so as to promote individual initiative which supports principles that strengthen a free society.

■■■ "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). A relatively strict test is warranted when, as in the instant case, criminal penalties are at stake. *Id.* at 498–99, 102 S.Ct. 1186. "[A] scienter requirement may mitigate a criminal law's vagueness by ensuring that it punishes only those who are aware their conduct is unlawful." *Gaudreau*, 860 F.2d at 360 (citing *Screws v. United States*, 325 U.S. 91, 101–04, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)).

■■■ This court in "evaluating a vagueness challenge to a state law must read the statute as it is interpreted by the state's highest court." *Gaudreau*, 860 F.2d at 361 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Wainwright v. Stone*, 414 U.S. 21, 22–23, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973)). The reported court decisions re-

flect that Utah's commercial bribery statute has been applied sparingly. The specific language of the statute has not been interpreted in any of those decisions. This court must, therefore, address the matter.[10]

In evaluating defendants' vagueness challenge to Section 76–6–508, the court must follow general principles of statutory construction pronounced by Utah courts.[11] The court is also guided by the legislative directive that provisions of Utah's penal code "shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law and the general purposes of Section 76–1–104."[12] Utah Code § 76–1–106.

### a. Essential Statutory Elements

Broken down into its essential elements relevant here, the Utah commercial bribery statute makes criminal the (1) offering or conferring (2) "upon the employee, agent, or fiduciary of an employer or principal" (3) "any benefit with the purpose of influencing the conduct of the employee, agent, or fiduciary" (4) "in relating to his employer's or principal's affairs" (5) when it is done "without the consent of the employer or principal" and (6) "contrary to the interests of the employer or principal." *See* Utah Code § 76–6–508.[13]

### 1. "any benefit"

Among other interpretative arguments, defendants urge, in essence, that the phrase conferring "any benefit with the purpose of influencing the conduct of the employee, agent, or fiduciary" is inherently ambiguous because the breadth of the language encompasses all gifts, including expressions of courtesy such as good will gifts. Defendants argue that, while such gifts are meant to encourage good feelings and influence the recipient to view the donor favorably, they do not rise to the

---

10. *See Meredith v. City of Winter Haven*, 320 U.S. 228, 237, 64 S.Ct. 7, 88 L.Ed. 9 (1943) (federal court must "decide questions of state law when necessary for the disposition of a case brought to it for decision, although the highest court of the state had not answered them, the answers [are] difficult, and the character of the answers which the highest state courts might ultimately give remained uncertain").

11. The "primary objective in construing enactments is to give effect to the legislature's intent." *Gohler v. Wood*, 919 P.2d 561, 562 (Utah 1996). " 'One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.' " *Mountain States Tel. & Tel. Co. v. Payne*, 782 P.2d 464, 466 (Utah 1989) (citation omitted). When "statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent." *Horton v. Royal Order of the Sun*, 821 P.2d 1167, 1168 (Utah 1991). The court is to "give meaning, where possible, to all provisions of a statute," *Lund v. Brown*, 11 P.3d 277, 282 (Utah 2000), and interpret provisions "in harmony ... 'with other statutes under the same and related chapters' ". *Lyon v. Burton*, 5 P.3d 616, 622 (Utah 2000) (citation omitted). A statute should be read to avoid "absurd consequences." *State v. Redd*, 992 P.2d 986, 990 (Utah 1999).

12. Utah Code § 76–1–104 provides:

 The provisions of this code shall be construed in accordance with these general purposes.
 (1) Forbid and prevent the commission of offenses.
 (2) Define adequately the conduct and mental state which constitute each offense and safeguard conduct that is without fault from condemnation as criminal.
 (3) Prescribe penalties which are proportionate to the seriousness of offenses and which permit recognition or differences in rehabilitation possibilities among individual offenders.
 (4) Prevent arbitrary or oppressive treatment of persons accused or convicted of offenses.

13. *See supra* p. 1052.

level of bribery that Section 76–6–508 was intended to criminalize. The court agrees and finds this particularly true as applied to defendants who were commissioned by the SLBC to persuade IOC members to select Salt Lake City over other bid contenders to host the Winter Olympics.

The "any benefit . . ." phrase is vague as applied in this instance because it fails to draw a clear line between what is illegal and what is not. In other words, when applied to defendants' Olympic bid-seeking endeavors, "the statute attempts to cover so much that it effectively covers nothing." *Musser v. State of Utah,* 333 U.S. 95, 97, 68 S.Ct. 397, 92 L.Ed. 562 (1948). As defined by Webster's Third New International Dictionary—Unabridged (1993), "benefit" means, among other things, an act of kindness, good deed, advantage, good, help, payment or a gift. It would be absurd for the court to conclude the Utah legislature intended to criminalize good deeds, help, or acts of kindness. It also broaches absurdity to believe that the legislature intended to criminalize good will gifts or gestures, especially in the context of promoting Salt Lake City and the State of Utah on the world stage to host the Olympic Winter Games. Even assuming the legislature may have intended its commercial bribery statute to expand to encompass these circumstances, uncertainty arises as to what benefits given to IOC members could be considered criminal. The statute leaves defendants to guess whether such gestures as transporting

IOC members to and from the airport is sanctioned by Section 76–6–508, but providing dinner for them is not; whether providing dinner is legal under the statute, but providing lodging is not; and so on and so forth.[14]

### 2. "in relating to"

The phrase "in relating to his employer's or principal's affairs" also raises vagueness concerns about its scope. A case in point is *United States v. Parise,* 159 F.3d 790 (3d Cir.1998), in which a divided panel of Third Circuit Judges interpreted Pennsylvania's bribery statute in significantly different ways. The Pennsylvania statute contains language almost identical to that relevant in this case. The majority concluded that the phrase "in relation to the affairs of his employer or principal" criminalized an employee's conduct regardless whether the employer suffered any detriment due to its employee accepting the benefit. *Id.* at 802–803. The third judge, in a persuasive and well-documented dissent, concluded that the majority's broad interpretation of the "in relation to the affairs" phrase was an unwarranted expansion of the bribery statute's scope. *Id.* at 804. Looking to interpretations given the same statutory language by other state courts, to interpret what he considered a vague Pennsylvania statute, the dissenting judge concluded that, unless the employer's interests were adversely affected by the employee's acceptance of the benefit, there was no violation of the commercial bribery statute. *Id.* at 805.

**14.** In fact situations, arguably analogous to this case, the Utah Supreme Court has applied the vagueness doctrine to strike down or limit statutory language. *See, e.g., State v. Musser,* 118 Utah 537, 223 P.2d 193 (1950) (broad sweep of general language "[t]o commit any act injurious . . . to the public morals" was unconstitutional for vagueness); *State v. Packard,* 122 Utah 369, 250 P.2d 561, 563–564 (1952) (finding statutory language "a national recognized union" unconstitutionally

vague); *In re Boyer,* 636 P.2d 1085, 1089 (Utah 1981) (court noted statutory language " 'responsible decisions' admits of such a broad interpretation as to raise a serious question of unconstitutional vagueness" before applying saving narrow construction); *State v. Bradshaw,* 541 P.2d 800, 801–802 (Utah 1975) (statutory language "intentionally interferes with . . . law enforcement" found to be unconstitutionally vague.)

In this case, there is no specific allegation in the indictment that defendants' conferring benefits upon IOC members to award Salt Lake City the Olympic Winter Games was detrimental to the IOC. Section 76–6–508's similar "in relating to . . ." phrase is vague as applied to these defendants because, like the Pennsylvania bribery statute, it is susceptible to two distinct interpretations. Whether there was any violation of Utah's statute, therefore, could depend upon which of two interpretations is adopted. Without the guidance of prior controlling case interpretation, defendants could not know which, if any, of their alleged efforts in seeking the Olympic Winter Games were prohibited.

### 3. "contrary to the interests"

The phrase "contrary to the interests of the employer or principal" is likewise vague because it imposes a subjective requirement on defendants. A subjective evaluation by the defendants, as well as by police and prosecutors, is required to determine what is "contrary to the interests" of the IOC and its members.[15] In the absence of a sufficiently clear, objective standard, the statute fails to provide defendants notice of what conduct is unlawful. Section 76–6–508, therefore, fails to satisfy due process. Additionally, as applied to defendants, the statute's vagueness is constitutionally deficient as exemplified by inconsistent prosecution: the federal government has elected to prosecute defendants based on conduct purportedly proscribed by Section 76–6–508, while the State of Utah has declined.

### 2. Rule of Lenity

■ The rule of lenity "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered."[16] *Lanier,* 520 U.S. at 266, 117 S.Ct. 1219. The rule is founded on two policies: (1) fair warning of what is unlawful, and (2) ensuring that legislatures, and not the courts, define what is criminal. *United States v. Bass,*

---

15. *See, e.g., United States v. Gaudreau,* 860 F.2d 357, 364 (10th Cir.1988) (characterizing *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971)) ("the Court held unconstitutionally vague a statute criminalizing acts of three or more persons assembling on any sidewalk who 'there conduct themselves in a manner annoying to persons passing by. . . .' . . . because whether or not a person's behavior is 'annoying' depends entirely upon the subjective judgment of the 'persons passing by,' or any police officer"); *State v. Packard,* 122 Utah 369, 250 P.2d 561, 563–564 (1952) (finding statutory language "a national recognized union" unconstitutionally vague and citing with approval *In re Peppers,* 189 Cal. 682, 209 P. 896, 897 (1922) "wherein an act providing that 'oranges . . . shall be considered unfit for shipment when frosted to the extent of endangering the reputation of the citrus industry' was struck down as uncertain because it provided no standard upon which the shipper could determine whether he was violating the act").

16. Although the Utah legislature has expressed the position that penal statutes are not to be strictly construed in Utah Code § 76–1–106, the legislature also admonishes that Utah laws be "construed . . . to promote justice and to effect the objects of the law and general purposes of Section 76–1–104." *Id.* See also *State v. Winward,* 907 P.2d 1188, 1192 (Utah App.1995) (citations omitted) (while acknowledging rule that criminal statutes are not to be strictly construed, court noted that "[w]e are careful not to interpret criminal statutes too broadly" and "we adhere to the principal that '[w]e cannot by construction liberalize [a] statute and enlarge its provisions' "). The court does not view Section 76–1–106 as contrary to the rule of lenity in this instance. Even a more flexible construction of Utah's commercial bribery statute, as urged by the federal government, applied to these unique circumstances is a strained interpretation of the statute that fails to effect the objects of the law, as illustrated by prior application. Such an application also fails to promote justice with respect to defendants' due process rights.

404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

For the reasons discussed herein, the court concludes that not · only is Utah's commercial bribery statute vague as applied to defendants, but it is ambiguous as to whether it applies at all to the conduct at issue in this case. No case law or advisory opinion exists that applies Section 76–6–508 to anything close to the alleged actions of defendants in courting the favor of IOC members. The court will not and cannot speculate that the Utah legislature intended Utah's commercial bribery statute to apply to defendants' alleged conduct in seeking to bring the Olympic Winter Games to Salt Lake City and Utah.[17]

### 3. Novel Statutory Construction

 Finally, the court is bound to follow Supreme Court precedent that "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier,* 520 U.S. at 260, 117 S.Ct. 1219.

Hosting the Olympic Winter Games is most likely a once-in-a-generation endeavor. Defendants were entrusted with seeking and winning the right from the IOC to host the Games. The court takes judicial notice that bidding for the Olympic Winter Games, which encompasses self-promotion, worldwide competition, and interacting with the IOC and its members from diverse countries and cultures, is a singular process. Nothing before the court suggests that the Utah legislature could have intended, or would wish, to criminalize de-

fendants' alleged conduct under the totality of the circumstances.

### IV. CONCLUSION

The State of Utah has chosen not to prosecute defendants for violation of any Utah law. Nevertheless, under the guise of aiding Utah with its law enforcement, federal prosecutors have co-opted an obscure Utah misdemeanor bribery statute of uncertain and improbable application as the only basis for charging defendants with four federal Travel Act felonies. The court has concluded that, in doing so, prosecutors employed a Utah law that cannot appropriately serve as a valid Travel Act predicate. The court also has concluded that, as applied to defendants, Utah's commercial bribery statute is unconstitutionally vague and ambiguous for time-tested reasons of due process.

As Mr. Justice Douglas once said "[t]hat seems to us to be the common sense of the matter; and common sense often makes good law." *Peak v. United States,* 353 U.S. 43, 46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957). The law is rarely black and white in its application. With the goal of doing justice and observing the rule of law, the court has endeavored to apply the principles of law and policy discussed with common sense and an absence of narrow-sighted rigidity. For the reasons discussed above, the court previously granted defendants' motion to dismiss with respect to the Travel Act counts.[18]

---

**17.** *See, e.g., United States v. D'Alessio,* 822 F.Supp. 1134, 1144 (D.N.J.1993) (rule of lenity applied to prevent criminal prosecution of county sheriff for alleged violation of the Rules Governing the Courts of the State of New Jersey prohibiting the solicitation and receipt of personal gifts where rule was argu-

ably ambiguous and no case law or advisory opinion had ever applied the rule to sheriffs).

**18.** In light of the court's decision granting defendants' motion as it relates to the Travel Act counts, the court need not and does not

address defendants' remaining arguments di- rected towards those counts.